TEWKSBURY vs. SCHULENBERG and others.

*February 24 — March 9, 1880.*

*(1, 2) Secondary Evidence. (3) Cause of Action. Franchise: How far compliance with legislative requirements must be shown.*

1. In an action for tolls due upon logs run through plaintiff's dam, defendants having failed to produce, upon due notice, the scale book of the logs cut at their camp, there was no error in admitting secondary proof of the contents of such book (by testimony of the person who kept it), together with the evidence that all the logs so scaled were run through the dam.

2. Where defendant's agent, charged with cutting, hauling and getting out the logs, employed a person to keep another scale book, at the landing, and such book had been delivered to and retained by defendants, and they had made settlements for stumpage in accordance therewith: *Held*, that testimony of their said agent as to its contents was properly admitted.

3. Plaintiff was authorized by statute to maintain certain dams, with a proviso that they should not raise the water above a certain height; was required to build and maintain suitable slides and flood-gates for specified purposes, keep them in repair, and also keep them open at certain times; and when he should have completed "said dams as aforesaid," was to have power to collect tolls on logs, etc., passing over the slides or driven by the aid of the dams, as a compensation for maintaining such dams; with a proviso that he was at all times to comply with the provisions as to slides and flood-gates. *Held*, that, upon showing that his dams were "in good repair" and "fit to run logs through," that the slides and gates were sufficient, and that defendants could not have run their logs through without the aid of such dams, he was entitled to recover the tolls, without further proof on his part of compliance with the statutes.

APPEAL from the Circuit Court for *St. Croix* County.

Action to recover plaintiff's charges for aiding the defendants in driving logs out of the north fork of Clam river by means of dams constructed and maintained therein by the plaintiff. Plaintiff claimed the right to maintain the dams and make the charges in question under ch. 154 of 1874 as amended by ch. 263 of 1876.[1]

---

[1] Sec. 1 of the act of 1874, above mentioned, authorizes the plaintiff, his

Tewksbury vs. Schulenberg and others.

After the close of the testimony, a motion by defendants for a nonsuit was denied, and the jury, by direction of the court, returned a verdict for the plaintiff for the sum demanded; and, from a judgment pursuant to the verdict, the defendants appealed.

For the appellants, there was a brief by *Baker & Spooner* and *McClure & Marsh*, and oral argument by *Mr. Marsh*. They contended, among other things, that where a right is given by a private act of the legislature upon conditions precedent, the party claiming under the act must plead and prove performance of such conditions (*Hewitt v. Town of Grand Chute*, 7 Wis., 282; *People v. Turnpike Road Co.*, 23 Wend., 206, per NELSON, C. J.; *State v. Curry*, 1 Nev., 251); and that in this case there was no proof that plaintiff's dams did not raise the water to exceed twelve feet, nor that they had

heirs and assigns, to maintain a dam or dams across the north fork of Clam river, at certain specified points, "*provided*, that such dam or dams shall not raise the water to exceed twelve feet." Section 2 provides that "the aforesaid *Tewksbury*, his heirs or assigns, shall build suitable slides in said dam or dams, for running logs, timber and lumber over the same, and shall keep the same in repair; they shall be kept open at all times when said river is at a driving stage and there are logs, timber or lumber to run over said dams, and when it is not necessary to hold the water back for the purpose of driving or flooding logs, timber or lumber below the said dam or dams, for which purposes flood-gates shall be kept in repair and built in such manner as to shut in such manner as the case may require, to flood said logs, timber or lumber." Sec. 4, as amended, provides that, "when the aforesaid *Tewksbury*, his heirs or assigns, shall have completed the said dam or dams as aforesaid, the said *Tewksbury*, his heirs or assigns, are hereby authorized and empowered to receive and collect from the owners of all lumber, timber and logs, passing over such slides or driven by the aid of such dams, as a compensation for maintaining such dam or dams, the sum of fifteen cents per thousand feet, board measure, the amount to be ascertained by scale on the landings in the woods; and the aforesaid *Tewksbury*, his heirs and assigns, shall have a lien on all logs, timber and lumber run over said dam or dams, or driven by the aid thereof, until the charges aforesaid shall be fully paid, which lien may be enforced in the same manner as the lien of laborers upon logs; *provided*, that the said *Tewksbury*, his heirs and assigns, shall at all times comply with the provisions of section 2 of this act."

been kept in repair, nor that the gates had been kept open or closed as provided in the charter, nor that the flood-gates were constructed in the manner there provided.  Counsel also contended that the court erred in admitting incompetent evidence as to the quantity of logs run through the dam.

For the respondent, there was a brief by *John W. Bashford* and *O. H. Comfort*, his attorneys, with *Bashford & Spilde*, of counsel, and oral argument by *R. M. Bashford*.

COLE, J.  It was undoubtedly incumbent on the plaintiff to show the amount of logs owned by the defendants which had been run over his dams, on which he claimed to be entitled to collect toll.  This, we think, he did do by the best proof within his power to offer upon the subject.  The witness Daniel Fox testified, in substance, that he had charge of the defendant's books at the camp where the logs in question were cut; and that he kept an account of each day's work, and himself recorded in these books, from the scaler's shingle, the quantity scaled.  He said that, without the books, from his recollection, he could state the amount appearing by the books to have been scaled; and he gave the amount.  The scale book was in the possession of the defendants, who had been served with due notice to produce it on the trial.  They failing to produce the book, there can be no doubt that the plaintiff was entitled to give secondary evidence of its contents, even if the testimony of the witness had been objected to, as it was not.

There was certainly evidence from which the jury might well have found that all these logs which were banked and scaled for the defendants, above the plaintiff's dam, during the winter of 1875–6, were run through the dam.  But it is insisted that the court erred in admitting the testimony of the witness Patrick Fox against the defendants' objection.  This witness had charge of and conducted the business of cutting, hauling and getting out the logs for the defendants that winter; indeed, he had an interest in the profits of the business.

He states the number of feet which were banked, sluiced and run through the plaintiff's dam. He said he employed a competent young man to do the scaling at the landing, and examined the books in which the scale was recorded from time to time. He testified as to the contents of the scale book; and as to the amount of logs thus got out. It is said that all this evidence relating to the quantity of logs scaled and run through the plaintiff's dam, which was thus founded on the scale book, was in the nature of the declarations of an agent, and is not admissible to prove a claim against the principal. It seems to us that this objection is wholly untenable. The plain purpose of this testimony was to prove the quantity of logs scaled as shown by the scale book. It was strictly secondary·evidence of the contents of a book in the possession and under the control of the defendants, which they were required to produce at the trial.

The able counsel for the defendants would surely not wish to be understood as controverting so elementary a principle in the law as that a party may give secondary evidence of the contents of a book or instrument in the possession of his adversary, who, after due notice, has refused to produce such book or instrument. It is true, the entries in the scale book were made by persons employed by Patrick Fox, and not by the defendants. But still it appears that the scale book was delivered to the defendants and retained by them, and they had actually made settlements for stumpage based upon the accuracy of its contents. Having thus treated the book the same as though the entries had been made by one of their own servants, the witness might testify as to its contents; for presumably the book was correct as to its entries. If the testimony as to its contents was not correct, the defendants certainly had the means at hand to disprove it. They had but to produce the book itself, the superior evidence, to·put an end to all controversy upon the point. Under the circumstances we have no doubt that the evidence objected to was admissible.

The amendment to the complaint, so as to make it state the true amount of logs proved to have been driven through the dams in question, was properly allowed. It was a matter not material, and rested largely in the discretion of the court below.

It is further objected that the court erred in directing a verdict for the plaintiff, because of his failure to prove that he had performed the conditions precedent necessary for him to perform in order to recover toll for the use of his dams. But we think this objection cannot prevail. The plaintiff testified that his dams were in good repair, fit to run logs through, and that the defendants could not have driven their logs without the use of his dams. He certainly showed a right to recover toll on the logs run by means of his dams.

It follows from these views that the judgment of the circuit court must be affirmed.

*By the Court.*—Judgment affirmed.